IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

---

EMILY HOUTZ,                                    :
INDIVIDUALLY AND ON BEHALF OF                   :
ALL OTHERS SIMILARLY SITUATED,                  :
       Plaintiff,                           :
                                            :
       v.                                   :     Civil No. 5:23-cv-00844-JMG
                                            :
PAXOS RESTAURANTS                               :
doing business as                               :
MELT RESTAURANT,                                :
       Defendant.                           :

---

**MEMORANDUM OPINION**

GALLAGHER, J.                                                    **February 26, 2024**

I.    **OVERVIEW**

    From 2011 to 2022, Plaintiff Emily Houtz diligently worked for Defendants; beginning as a hostess, she was eventually promoted to lead server. She resigned in 2022 and her reasons for doing so form the basis of this lawsuit. Ms. Houtz's Amended Complaint brought five counts against her former employer including individual and collective actions under the Fair Labor Standards Act ("FLSA"), a class action under the Pennsylvania Minimum Wage Act ("PaMWA"), and a class action under the Pennsylvania Wage Payment and Collection Law ("PaWPCL").[1]

    On January 29, 2024—following the Court's denial of Plaintiff's Motion to Certify Conditionally FLSA Collective Action ("Motion") under the FLSA and Plaintiff's subsequent failure to timely refile—the Court ordered the parties to show cause why the FLSA collective action allegations should not be dismissed. For the following reasons, the Court dismisses

---

[1] Count V, which brought an individual state claim for wrongful termination, was previously dismissed.

Plaintiff's FLSA collective action allegations and strikes them from the pleading. The Court also declines to exercise supplemental jurisdiction over Plaintiff's state law claims because without the FLSA collective action they will predominate over the remaining federal individual claim. The state law claims are dismissed without prejudice so that Plaintiff may refile in state court.

## II.     FACTUAL BACKGROUND

### A.  Allegations in the Amended Complaint[2]

Defendants Paxos Restaurants, Inc. and Melt Restaurant, LLC (collectively, "Defendants") hired Plaintiff as a hostess on approximately November 7, 2011. At some point in the ensuing years, Plaintiff switched from hostess to server, a position whose compensation relies heavily on tips. The parties agree that Defendants did not pay Plaintiff minimum wage, which is a common and legal practice in restaurants—so long as a valid tip pool is maintained.

In 2022, Plaintiff was promoted to lead party server. In that role, Plaintiff worked private events, i.e., "parties" for which booking patrons were charged an automatic 20% "gratuity." Party servers stood to make considerable tips in this role owing to the size of bookings being charged this automatic "gratuity." However, of the 20% "gratuity," 18% went to the servers and Defendants kept the remaining 2%. This practice is what gave rise to Plaintiff's allegations.

Plaintiff felt legally entitled to the full 20% charge. She voiced her concerns to both the director of operations and the general manager that Defendants were violating the law by failing to advertise their practice of keeping a portion of the automatic "gratuity." A few months later, Plaintiff complained to leadership again. A few months after that, leadership offered to increase the automatic "gratuity" to 22% while still reserving 2% for itself. Plaintiff requested that the

---

[2] This section relies on Plaintiff's version of events because, at this early stage, the Court must accept as true all factual allegations in the Amended Complaint. *See Weiner v. Quaker Oats Co.*, 129 F.3d 310, 315 (3d Cir. 1997).

restaurant advertise that a portion of the automatic gratuity went to the restaurant, but Defendants refused and demoted her to floor server—a position that did not work private events and was not subject to the automatic "gratuity." Plaintiff resigned following her demotion.

### B.  Procedural History

On July 5, 2023, Defendants filed a Motion to dismiss the complaint for failure to state a claim upon which relief can be granted. *See* ECF No. 5. In response, Plaintiff filed an amended complaint on July 18, 2023. *See* ECF No. 6. Defendants filed a second motion to dismiss, *see* ECF No. 15, and on October 17, 2023, the Court granted the motion to dismiss in part, dismissing Plaintiff's claim for wrongful termination in violation of public policy in Count V. *See* ECF No. 21.

On November 24, 2023—a day after the deadline set out in the operative scheduling order at the time (ECF No. 24)—Plaintiff moved to conditionally certify the collective action under the FLSA. ECF No. 25. The Court denied Plaintiff's Motion for lack of supporting evidence and explained that the Third Circuit Court of Appeals has set "the bar for preliminary certification of this collective action above mere averments in the Complaint." Order at n.1 (ECF No. 27). The Court also granted Plaintiff leave to refile the Motion and issued an amended scheduling order to that effect. Plaintiff's new deadline to move for conditional certification was January 19, 2024. *See* ECF No. 27.

In the intervening time, the parties were scheduled to appear for a telephonic status conference with the Court. ECF No. 24 at ¶ 4. Plaintiff provided the call-in details, but the Court was unable to enter the conference call using the details provided. The Court contacted the office of Plaintiff's counsel but were unable to reach counsel. Plaintiff did not attempt to reach the Court. Several hours later, Plaintiff's counsel emailed the Court stating that he "waited just under ten

minutes but then had to return to a proceeding," which was later determined to be a deposition in an unrelated case. Plaintiff stated in that same email, "I still plan on filing the motion [to conditionally certify a collective action] scheduled for January 19." Plaintiff never requested an extension of the January 19 deadline and, as of this opinion, never refiled her Motion.

The Court held a telephonic conference on January 25, 2024 during which it requested an explanation from Plaintiff and stated its intention to issue an order to show cause why the FLSA collective action should not be dismissed. Plaintiff offered no explanation other than a vague "office-related" issue. The Court issued its order to show cause on January 29, 2024. Plaintiff and Defendants filed their responses to the order to show ("Responses") on February 1st and 8th, respectively. ECF No.s 34–35.

## III.   LEGAL STANDARD

The parties disagree whether Federal Rule of Civil Procedure 16(b)(4) or 6(b) apply to Plaintiff's request for a third opportunity to move for conditional certification of her FLSA collective action. We outline both standards below, but as the Court will explain, each standard leads to the same result.

FRCP 16(b)(4) provides that a court's scheduling order "may be modified only for good cause and with the judge's consent." The Rule 16(b)(4) good cause inquiry "focuses on the diligence of the party seeking the modification of the scheduling order." *Chancellor v. Pottsgrove Sch. Dist.*, 501 F.Supp.2d 695, 701 (E.D. Pa. 2007) (Robreno, J.). That is, if the moving party "was not diligent, there is no 'good cause' for modifying the scheduling order." *Id.* (*citing Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992) ("If [a] party was not diligent, the inquiry should end.")).

Under FRCP 6(b), "[w]hen an act may or must be done within a specified time, the court may, for good cause, extend the time . . . on motion made after the time has expired if the party failed to act because of excusable neglect." Whether a party's neglect of a deadline is excusable is an equitable question. *See Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993). A Court should assess all relevant circumstances surrounding a party's lapse, which include "the danger of prejudice to the [nonmovant], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Id.*

FRCP 12(f) permits a court to, *sua sponte*, "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Relief under FRCP 12(f) will be denied unless the allegations "have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues in the case." *Goode v. LexisNexis Risk & Information Analytics Group, Inc.*, 284 F.R.D. 238, 243 (E.D. Pa. 2012) (citation and quotation marks omitted). And although this relief is generally disfavored, that decision "is vested in the trial [judge's] sound discretion." *Tauro v. Baer*, No. CIV. A. 08-1545, 2009 WL 2410952, at *1 (W.D. Pa. Aug. 4, 2009 (*quoting Snare & Triest v. Friedman*, 169 F. 1, 6 (3d Cir. 1909)).

## IV.   ANALYSIS

A plaintiff is responsible for prosecuting their case, and unexcused inaction is a consequential choice. After moving for conditional certification of her collective action a day late, the Court denied Plaintiff's Motion on the merits without prejudice. The Court offered Plaintiff a second chance to so move, but that date came and went without a refiling despite Plaintiff's expressed intention to do so. Upon consideration of the parties' Responses, and for reasons expressed below, the Court will not provide Plaintiff a third opportunity to move for conditional

5

certification. The Court's prior denial of conditional certification stands and the FLSA collective action allegations are stricken from the pleadings.

The controlling question here is whether Plaintiff has established "good cause" to modify the Court's scheduling order a second time. Though Plaintiff argues that FRCP 6(b)(1)(B)'s "excusable neglect" standard controls, that rule also requires a showing of good cause before relief may be granted. *See* 4B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1165 (4th ed. 2023) ("Current Rule 6(b)(1)(B)—formerly Rule 6(b)(2)—provides that the district court may order an extension even after the expiration of a specified time period, but only for 'good cause' and where the party's failure to act in a timely fashion was the result of 'excusable neglect.'"). "[W]hether "good cause" exists under Rule 16(b)(4) depends in part on a plaintiff's diligence." *Premier Comp Sols., LLC v. UPMC*, 970 F.3d 316, 319 (3d Cir. 2020) (*citing Race Tires Am., Inc. v. Hoosier Racing Tire Corp.*, 614 F.3d 57, 84–85 (3d Cir. 2010)).

Without a third opportunity to conditionally certify the FLSA collective, the Court's December 27, 2023 order denying conditional certification stands. Accordingly, Plaintiff's FLSA collective allegations are dismissed and stricken from the pleadings. What remains of the amended complaint, then, is an individual FLSA claim alongside two state class actions. The Court declines to exercise supplemental jurisdiction over these class actions because they substantially predominate over the remaining federal claim.

### A.  Absence of good cause shown by a lack of diligence

Plaintiff exhibited a lack of diligence by filing her Motion—which relied on the wrong evidentiary standard—late, effectively skipping a Court-ordered status conference, and missing her refiling deadline without a credible excuse.

        **1.  Plaintiff's first and only Motion for conditional certification was late but denied on the merits nonetheless for applying the wrong standard for conditional certification.**

To begin, it is notable that Plaintiff's Motion was late. The Court's then-operative scheduling order set November 23, 2023 as the due date for Plaintiff's first motion for conditional certification of the FLSA collective action. *See* ECF No. 24, ¶ 2. Plaintiff's Motion was docketed a day late on November 24. *See* ECF No. 25. Though the Court's order did not consider Plaintiff's tardiness when denying conditional certification, with the benefit of hindsight, it was the first indication of Plaintiff's lack of diligence in this matter.

The Court also considers Plaintiff's reliance on the incorrect evidentiary standard in its Motion further indication of her lack of diligence. Plaintiff's Motion nominally stated that a "modest factual showing that employees identified in the complaint are similarly situated" is all that is needed to establish the conditional certification standard. Motion at 6 (ECF No. 25). Her argument, however, relied entirely on the four-corners of her Complaint. *See id.* at 7 ("The lenient standard required at this stage is easily met by the Amended Complaint in this case."). The Third Circuit's conditional certification standard is modest, but it demands more than bare allegations in a complaint. *See Garcia v. Vertical Screen, Inc.*, 387 F.Supp.3d 598, 603–04 (E.D. Pa. 2019) (citations omitted) (Holding that a plaintiff cannot make a "modest factual showing" based "solely on allegations in the complaint" and must, instead, "provide factual support . . . in the form of affidavits, declarations, deposition testimony, or other [supporting] documents.").

Courts across the country employ one of two evidentiary standards at the conditional certification stage of an FLSA collective action: "substantial allegation" or "modest factual showing." Though each is lenient, the latter is stricter than the former. Under the "substantial allegation" standard, a Court may grant conditional certification from allegations in the complaint alone. Whereas under the "modest factual showing" standard, adopted by the Third Circuit in

*Symczyk v. Genesis HealthCare Corporation*, a Court may not grant conditional certification on bare allegations. *See* 656 F.3d 189, 192–93, *rev'd on other grounds*, 569 U.S. 66 (2013).

In her Motion, ECF No. 25, Plaintiff seemed to argue for the "substantial allegation" standard by citing to *Campbell v. City of Los Angeles*, 903 F.3d 1090 (9th Cir. 2018). *See* Motion at 7.  In fairness to the Plaintiff, the Court's initial Scheduling Order mentioned *Campbell*. ECF No. 24 at n.1. However, the Court explicitly stated in its Order denying the Motion without prejudice that the "modest factual showing" standard applied, ECF No. 27, and removed the *Campbell* cite from the Amended Scheduling Order, ECF No. 28. Plaintiff has nevertheless doubled down in her attempt for the "substantial allegation" standard to apply in her Response to the Court's Order to Show Cause. *See* ECF No. 34-1 at 8.

The Court can imagine a case where exhibits attached to the pleadings elevate a complaint to a sufficient factual showing, but no such exhibits were attached here. Nor can Plaintiff claim ignorance of the standard's contours: there are instances of Eastern District of Pennsylvania courts denying plaintiffs' motions for conditional certification even when providing supporting documents beyond bare allegations. *See, e.g., Shoop v. JusticeWorks YouthCare, Inc.*, No. 2:21-CV-732, 2022 WL 1748390, at *3 (W.D. Pa. May 31, 2022). The Court's order denying conditional certification hardly struck new legal ground.

### 2. Plaintiff has shown no diligence since the Court granted her a second chance to move for conditional certification.

By denying the Motion without prejudice and providing Plaintiff more than three weeks to refile, the Court followed well-established best-practices. *See Halle v. W. Penn Allegheny Health Sys. Inc.*, 842 F.3d 215, 224 (3d Cir. 2016) (*citing Bamgbose v. Delta–T Group, Inc.*, 724 F.Supp.2d 510, 514 (E.D. Pa. 2010) (motion for conditional certification denied without prejudice for future refiling); 7B WRIGHT & MILLER, Fed. Prac. and P. § 1807 ("If conditional certification

is denied, the court may allow a second opportunity to obtain sufficient evidence of a collective to warrant conditional certification and the notice to opt in.")). Though plaintiffs are sometimes afforded a second try, the Court is unaware of any case where a plaintiff was granted a third try.

The Court granted Plaintiff an extension to move for conditional certification believing that the time would be more than sufficient to gather affidavits, declarations, or other supporting documents for which no party discovery was required. Yet Plaintiff's own Response reflects an absence of urgency. First, nowhere does she indicate that she sought non-party discovery such as affidavits or declarations during the time allotted. Plaintiff may possess certain policies of Defendants' that establish a modest factual showing, but the Response doesn't mention these either. Instead, Plaintiff emphasizes that her discovery requests upon Defendants remained unanswered by the January 19, 2024 deadline to refile. Invoking this excuse was an unfortunate decision because its accuracy is called into question by Plaintiff's own Response. If this party discovery was necessary for conditional certification, then why—in the very same email to the Court on January 11, 2024—does Plaintiff acknowledge that (1) Defendants were not able to provide discovery responses until well after her January 19, 2024 deadline to refile and (2) she "still plan[s] on filing the motion scheduled for January 19"? *See* D. Koller Email to the Court, Jan. 11, 2024.

Setting aside concerns for accuracy, "counsel must understand the negative consequences that may attend a failure to request an extension of time; a failure to do so may signify a lack of diligence to some district judges." 4B WRIGHT & MILLER, Fed. Prac. and P. § 1165; *see also Sullivan v. Mitchell*, 151 F.R.D. 331 (N.D. Ill. 1993) (using plaintiff's failure to move for Rule 6(b) extension of time as evidence of plaintiff's lack of diligence). Indeed, Plaintiff never requested an extension to the January 19 deadline. Nor did she file a motion to compel until after the Court

ordered her to show cause, *see* ECF No. 32, despite encouragement from the Court during our Rule 16 conference to do so when needed.

Plaintiff's absence at a January 11, 2024 telephonic status conference is also instructive. The Court scheduled a status conference with the parties for 2:00 p.m. and Plaintiff provided the dial-in information. *See* Scheduling Order at ¶ 4 (ECF No. 24); Email from M. Wicks to the Court, Jan. 3, 2024. The Court joined the call at the scheduled time, but the parties were not present. The Court called Plaintiff to no avail but received an email from Plaintiff hours later stating "[b]oth defense counsel and I were on for the 2 pm call this morning in this case. I waited just under ten minutes but then had to return to a proceeding." D. Koller Email to the Court, Jan. 11, 2024.[3] Plaintiff later shared with the Court that the "proceeding" he returned to was a deposition in an unrelated matter.

Parties are required to abide by the Court's orders, including attendance at status conferences mandated in scheduling orders. Telephonic conferences are utilized for the parties' convenience but should not be abused. The January 11th conference was scheduled for 2:00 to 2:30 p.m. and the Court expected the parties to be free during that entire period—not just the first ten minutes. And if there is some technical difficulty, as may occur from time to time, the Court expects the parties to work to resolve it, rather than leveraging the confusion as an excuse to evade a court-ordered conference in favor of another matter's deposition. Such conduct may serve as encouragement for courts to return to old-fashioned, in-person conferences.

In any case, Plaintiff's January 11 email assured the Court that she would meet the January 19th refiling deadline. Following the deadline's passage and during a January 25, 2024 status call,

---

[3] This is the same email in which Plaintiff confirmed his intention to re-file for conditional certification on January 19.

Plaintiff suggested that he would have the Motion re-filed within a week but offered no explanation for its dilatoriness. As of this Opinion, the Court never received a refiled brief.

Plaintiff's Response states that her "failure to file a motion to conditionally certify the FLSA collective action prior to January 19, 2024 was not a result of failure to exercise due diligence nor was it designed to prejudice Defendant," but offers no credible explanation for missing the deadline. Instead, she blames a lack of party discovery that—by her own request—was not due to her for months and trivializes the Court's deadlines as "technicalities." But court-imposed deadlines are not mere trivialities.

This Court is responsible for managing hundreds of cases in an efficient, just, and equitable manner. Scheduling orders issued under Rule 16 are perhaps the most important tool we have to ensure that cases in our docket progress properly. By limiting our amendments of those scheduling orders to instances of "good cause," the FRCP prevent unnecessary disruptions to our docket owing to attorney neglect or inadvertence.[4] Afterall, delays increase the cost of litigation, forestall the resolution of highly consequential allegations, and their effects are felt beyond the cases in which they originate.[5]

We reach this decision while recognizing this Circuit's preference for cases to be decided on the merits. Indeed, because the Court's denial of conditional certification on December 27, 2023 was on the merits, the Courts decision is not in tension with Circuit preference.[6]

---

[4] Attorney neglect and inadvertence are thankfully rare; perhaps due in part to the "good cause" standard.

[5] Delays also affect the rights of litigants and putative collective class members. In a collective action, a putative class member's statutory period does not toll until they opts-in; a putative member may not opt-in until conditional certification is granted. 29 U.S.C. § 256.

[6] And Plaintiff's state class actions, over which the Court declines to exercise supplemental jurisdiction for reasons stated in Section IV.C., may be refiled in state court thereby ameliorating any prejudice to Plaintiff therein.

### B.  Striking the FLSA collective action allegations

The Court will exercise the discretion afforded under FRCP 12(f)(1) and *sua sponte* strike from the Amended Complaint references to the now-dismissed FLSA collective action. The references to Plaintiff pursuing this matter as a "collective action" do not conform to the Court's denial of conditional certification order, ECF No. 27, and instant finding of no cause for providing Plaintiff a third opportunity to refile. Given these orders, the Amended Complaint's references to a "collective action" "have no possible relation to the controversy and may . . . confuse the issues in the case." *Goode*, 284 F.R.D. at 243. Plaintiff is accordingly granted leave to amend in accordance with this order.[7]

### C.  Supplemental jurisdiction

Following Defendant's partially successful motion to dismiss, ECF No. 21, the amended complaint's remaining allegations were an FLSA collective action for failure to pay wages, an FLSA individual action for retaliation, a PaMWA class action for failure to pay wages, and a PaWPCL individual action for retaliation. Under 28 U.S.C. § 1367(a), the Court had jurisdiction over Plaintiff's state law claims because "they form[ed] part of the same case or controversy" as the federal claims, over which the Court had original jurisdiction.

The federal collective action's dismissal from this case changes things. Section 1367 goes on to state that a district court "may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the claim substantially predominates over the claim or claims over which the district court has original jurisdiction." *Id.* at § 1367(c)–(c)(2). Where "the state issues substantially predominate, whether in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought, the state claims may be dismissed without prejudice and left for resolution to state tribunals." *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966).

---

[7] In Plaintiff's Second Amended Complaint, Plaintiff shall also remove references to Count V, which was dismissed on Defendant's 12(b)(6) motion.

Substantial predomination occurs "where a state claim constitutes the real body of a case, to which the federal claim is only an appendage—only where permitting litigation of all claims in the district court can accurately be described as allowing a federal tail to wag what is in substance a state dog." *Borough of W. Mifflin v. Lancaster*, 45 F.3d 780, 789 (3d Cir. 1995) (citation and internal quotation marks omitted) (*quoting Gibbs*, 383 U.S. at 727).

The Third Circuit Court of Appeals has already addressed the issue of supplemental jurisdiction in a similar case. In *De Asencio v. Tyson Foods, Inc.*, the Third Circuit reversed a district court's decision to exercise supplemental jurisdiction over a PaWPCL class action in a case that also brought an FLSA collective action. 342 F.3d 301 (3d Cir. 2003), *as amended* (Nov. 14, 2003). The court gave two primary reasons for its decision. First, the case raised a novel question of state law, which would necessitate more testimony and evidence than the FLSA claim, i.e., the state claims called for greater proofs and a wider scope of issues. Second, it noted divergent approaches to minimum wage violations endorsed by Pennsylvania and Congress. While Pennsylvania employs opt-out class actions, "Congress chose to limit the scope of representative actions" by using opt-in collective actions. *Id.* at 310.

This Court sees each of those reasons present here. Plaintiff's state law claims raise concerns for the terms of proof and scope of the issues raised. As in *De Asencio*, the Court will have to address at least one novel state law issue: whether a service charge may be transformed into a tip by nature of its labelling alone. Plaintiff argues that because patrons were charged an automatic 20%—labelled "gratuity"—on top of their bill, this charge constituted a tip that Defendants were required to pay under the PaMWA and PaWPCL. This charge is only distinguished from a service charge by its labelling. "Given the importance of the wage-protection legal scheme in Pennsylvania," the state should be afforded the first opportunity to answer this

question. *Id.* Also, by dismissing the FLSA collective action, the terms of proof and scope of issues are even greater here than in *De Asencio*. What remains here are two state class actions and a federal individual claim. The class certification process for Plaintiff's state claims will require substantially more testimony on various additional categories of issues than the individual federal claim.

Second, the federal interest in opt-in actions is no less "manifest" here than it was in *De Asencio*. *Id.* It is true that this Court would not be called to oversee an opt-in collective action alongside an opt-out state class action, but that only strengthens the case for abstaining from supplemental jurisdiction. The *De Asencio* court explained that:

> [p]redomination under section 1367 generally goes to the type of claim, not the number of parties involved. But the disparity in numbers of similarly situated plaintiffs may be so great that it becomes dispositive by transforming the action to a substantial degree, by causing the federal tail represented by a comparatively small number of plaintiffs to wag what is in substance a state dog.

*Id.* at 311. Granted, the disparity presented by Tyson Foods, Inc.—the defendant in *De Asencio*— was likely greater than the instant case. Nevertheless, the disparity in plaintiffs in this case is the gap between an individual action and a class action, not a collective action and a class action.

## V. CONCLUSION

Upon review of parties' responses to the Court's Order to Show Cause and the facts of this case laid out above, the Court dismisses the FLSA collective action (Count I). The Court also declines to exercise supplemental jurisdiction over Plaintiff's state class actions (Counts II and III) because, without Count I, they now predominate over the remaining individual federal claim in

Count IV. Plaintiff may refile the state class action claims in Pennsylvania state court.

BY THE COURT:

*/s/ John M. Gallagher*
JOHN M. GALLAGHER
United States District Court Judge