IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **EMILY HOUTZ** : | |
|     Plaintiff, : | |
| : | |
| v. : | Civil No. 5:23-cv-00844-JMG |
| : | |
| **PAXOS RESTAURANTS d/b/a** : | |
| **MELT RESTAURANT** : | |
|     Defendants. : | |

**MEMORANDUM OPINION**

**GALLAGHER, J.**                                                                                             September 27, 2024

**I.      OVERVIEW**

    Plaintiff Emily Houtz was employed by Defendant Paxos Restaurants, at Melt Restaurant, from 2011 to 2022. Plaintiff worked in several roles at the restaurant—she started as a hostess, became a server where she worked the floor of the restaurant, and eventually became lead party server where she worked large parties and events that the restaurant hosted. This dispute concerns the way she was paid when she worked the large parties and events. Defendant imposed an automatic gratuity, or a service fee, of twenty percent of a customer's bill. Of this twenty percent, Plaintiff received eighteen percentage points while Defendant retained two percentage points. Plaintiff claims that this practice violated the Fair Labor Standards Act's ("FLSA") prohibition on employers keeping their employees' tips and she was entitled to the entirety of the service fee. The Court finds that there is a legal distinction between "tips," which are protected by the law, and "service fees," which are not. Accordingly, Plaintiff's claim under the FLSA fails as a matter of law. However, there remains a genuine issue of material fact as to whether Defendant retaliated

against Plaintiff by demoting her in response to her complaints about her pay. This retaliation claim survives summary judgment and may proceed to trial.

## II.     FACTUAL BACKGROUND

Plaintiff worked at Melt Restaurant in Center Valley, Pennsylvania. *See* Houtz Dep. at 32:8-12. She started working there in November of 2011 as a hostess. *See id.* at 31:16-25. She became a server in February of 2012. *See id.* at 33:23-24. During this period, she worked mainly on the floor of the restaurant but also worked some events and large parties. *See id.* at 34:4-12. Over time, she became lead party server, and by the end of her employment she was almost exclusively working large parties and events. *See id.* at 34:13-17. Since May of 2022, when Plaintiff worked as lead party server, she was paid a base rate of $5.00 per hour. *See id.* at 41:9-10. When she worked at the restaurant as a floor server, she was paid a base rate of $2.83 per hour. *See* Fernandes Dep. at 35:3-7.

When Defendant hosted large parties or events, it assessed a twenty-percent automatic gratuity fee on customers' bills. *See* Houtz Dep. at 74:2-3. Of this twenty-percent fee, servers were allocated eighteen percentage points, while the house retained two percentage points. *See* Fernandes Dep. at 16:2-8. The customer's receipt listed this charge as a "20% Large Party Gratuity." *See* Pl.'s Ex. 2 – HOUTZ 000471. Beginning in May of 2022, Plaintiff began to raise complaints regarding this payment structure, alleging that it was illegal. *See* Houtz Dep. at 57:9-19. She continued to raise complaints over this structure in the months that followed. *Id.* at 59:14-17. Plaintiff indicated to Defendant that she was considering taking legal action against Defendant because of Defendant's withholding of two percentage points of the service fee. *See id.* at 58:15-18; 59:18-25; 62:13-17.

Plaintiff alleges that Defendant retaliated against her because of these complaints regarding her pay. She alleges that she was told that she would no longer be able to work large parties or events because she had complained about her pay. *See* Houtz Dep. 45:1-10. Defendant alleges that they informed Plaintiff that Defendant would not be changing the fee structure, and she could continue to work as a party server or as a floor server if she so chose. *See* Hofschild Dep. at 12:12-20; 15:4-11; *see also* Fernandes Dep. at 34:7-14.

On March 27, 2024, Plaintiff filed her Second Amended Complaint (ECF No. 39) bringing two claims: (1) violation of the FLSA's prohibition against employers keeping their employees tips, and (2) a violation of the FLSA's anti-retaliation provision. Defendant moved for summary judgment on both counts, s*ee* ECF No. 44, while Plaintiff moved for summary judgment on the first count. *See* ECF No. 45.

### III.   STANDARD OF REVIEW

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is "genuine" when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Physicians Healthsource, Inc. v. Cephalon, Inc.*, 954 F.3d 615, 618 (3d Cir. 2020). A fact is material if "it might affect the outcome of the suit under governing law." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The party moving for summary judgement must "identify[ ] those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrates the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). In response, the nonmoving party must then "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324

(internal quotation marks omitted). "The mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." *Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 192 (3d Cir. 2015) (quoting *Anderson*, 477 U.S. at 252).

In applying this standard, the court must "construe the evidence in the light most favorable to the non-moving party." *Anderson*, 477 U.S. at 255. At the summary judgment stage, the court's role is not to weigh the evidence and determine the ultimate truth of the allegations. *Baloga v. Pittston Area Sch. Dist.*, 927 F.3d 742, 752 (3d Cir. 2019); *see also InterVest, Inc. v. Bloomberg, L.P.*, 340 F.3d 144, 160 (3d Cir. 2003) ("When analyzing the evidence under this summary judgment standard, a court is not to weigh the evidence or make credibility determinations; these are tasks left for the fact-finder." (internal quotation marks omitted)). Instead, the court's task is to determine whether there remains a genuine issue of fact for trial. *Id.* When there are cross-motions for summary judgment, as there are here, the standard of review does not change. *See Appelmans v. City of Phila.*, 826 F.2d 214, 216 (3d Cir. 1987). However, "[i]f upon review of cross motions for summary judgment [the court] find[s] no genuine dispute over material facts, then [the court] will order judgment to be entered in favor of the party deserving judgment in light of the law and undisputed facts." *Iberia Foods Corp. v. Romeo*, 150 F.3d 298, 302 (3d Cir. 1998).

## IV.   ANALYSIS

### a.  FLSA Claim – 29 U.S.C. §§ 203(m)(2)(B), 216(b)

Plaintiff has brought a claim under the FLSA alleging a violation of 29 U.S.C. § 203(m)(2)(B). This provision provides that: "An employer may not keep tips received by its employees for any purposes, including allowing managers or supervisors to keep any portion of employees' tips, regardless of whether or not the employer takes a tip credit." *Id.*; *see also id.* §

4

216(b) ("Any employer who violates section 203(m)(2)(B) of this title shall be liable to the employee or employees affected in the amount of the sum of any tip credit taken by the employer and all such tips unlawfully kept by the employer, and in an equal amount as liquidated damages."). Section 203(m)(2)(B) was added to the FLSA in March of 2018 as part of the Consolidated Appropriations Act of 2018. *See* Consolidated Appropriations Act, 2018, Pub. L. No. 115-141, Div. S, Title XII, § 1201(a), 132 Stat. 1148. Plaintiff claims that she was entitled to the entirety of the twenty percent fee that Defendant levied on customers' bills for large parties, instead of just eighteen percentage points of said fee. There is a legal distinction between "tips" and "service charges," and for that reason her claim is foreclosed, and Defendant's Motion for Summary Judgment is granted as to Count I.

The Department of Labor has promulgated relevant regulations as to the definition of a "tip" under the FLSA. The Court acknowledges that under the Supreme Court's recent decision in *Loper Bright Enter. v. Raimondo*, 144 S. Ct. 2244 (2024), these regulations are no longer binding on the Court's statutory interpretation. *See id.* at 2263 ("[C]ourts need not and under the APA may not defer to an agency interpretation of the law simply because a statute is ambiguous.") (overruling *Chevron, U.S.A. v. Nat. Res. Def. Council*, 467 U.S. 837 (1984)).

Nevertheless, the Supreme Court notes that the agency's regulatory definition may still have "the power to persuade." *See id.* at 2259 (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)). "[I]nterpretations and opinions of the relevant agency, made in pursuance of official duty and based upon specialized experience, constituted a body of experience and informed judgment to which courts and litigants could properly resort for guidance, even on legal questions. *Id.* (cleaned up) (quoting *Skidmore*, 323 U.S. at 139-40). "The weight of such a judgment in a particular case . . . would depend upon the thoroughness evident in its consideration, the validity

of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control." *Id.* (quoting *Skidmore*, 323 U.S. at 140).

29 C.F.R. § 531.52(a) defines a "tip" as "a sum presented by a customer as a gift or gratuity in recognition of some service performed for the customer. It is to be distinguished from payment of a charge, if any, made for the service. Whether a tip is to be given, and its amount, are matters determined solely by the customer." Another, neighboring regulation provides even more clarity: "A compulsory charge for service, such as 15 percent of the amount of the bill, imposed on a customer by an employer's establishment, is not a tip . . . ." 29 C.F.R. § 531.55(a). These two regulations have been in substantially the same form since 1967. *See* Wage Payments Under the Fair Labor Standards Act of 1938, 32 Fed. Reg. 13,575 (Sept. 28, 1967).

The parties have not cited, nor has this Court located, any relevant Third Circuit caselaw interpreting what qualifies as a "tip" under the FLSA. But there are two relevant cases from the Fourth and Eleventh Circuits which the parties have discussed, and the Court finds that while both cases cut in favor of Defendant's position, they also both rely squarely on 29 C.F.R § 531.52 in coming to their conclusions. In *Wai Man Tom v. Hosp. Ventures LLC*, 980 F.3d 1027 (4th Cir. 2020), the court examined whether "automatic gratuities . . . of twenty percent of the bill for parties of six or more" qualified as tips. *Id.* at 1031. In its determination of what qualified as a "tip" under the statute, the court held that, under the regulation, "the material issue is not whether customers always paid a twenty-percent automatic gratuity. The material issue is *who* determined whether and how much to pay." *Id.* at 1038 (emphasis included). The automatic gratuity in *Wai Man Tom* did not qualify as a "tip" under the FLSA because "customers did not have unfettered discretion to leave (or not leave) the twenty-percent gratuity." *Id.* The court did caution that its "decision should not be construed to mean that any time a fixed-rate gratuity is placed on a restaurant bill, it

6

is not a tip," as there may be a "genuine issue of material fact concerning the proper classification of automatic gratuities." *Id.* Such issues of fact involve "whether the discretion concerning the charge rested with the customer or the restaurant." *Id.*

Then, in *Compere v. Nusret Miami, LLC*, 28 F.4th 1180 (11th Cir. 2022), the Eleventh Circuit came to a similar result. There, the fee was an eighteen-percent service charge that was added to a customer's bill. *See id.* at 1182. The charge was "non-negotiable," and only restaurant managers "ha[d] the discretion to remove it from the bill when a customer complain[ed] about the service or food." *Id.* ("[T]he record contains no evidence that the customer has the discretion to negotiate or remove the charge."). The court determined that the service charge did not qualify as a tip under the terms of the FLSA. *Id.* at 1186. True, the charge there was labeled as either a "service charge" or an "automatic gratuity," *see id.* at 1182 n.3, but these labels were not determinative in the outcome. The distinctive quality was that the charge was mandatory. *Id.* at 1186 ("Critically, whether and how much to pay are not determined solely by the customer. Indeed, those decisions are not determined by the customer at all.").

The Fair Labor Standards Act does not define a "tip," so the Court will interpret the statutory language "in accord with the ordinary public meaning of [the] term at the time of its enactment." *Bostock v. Clayton Cnty., Georgia*, 590 U.S. 644, 654 (2020). To find the ordinary meaning of the word, the Court "look[s] to dictionary definitions." *Downey v. Pa. Dep't of Corr.*, 968 F.3d 299, 306 (3d Cir. 2020). Black's Law Dictionary defines "tip" as "A gratuity for services given." *Tip*, BLACK'S LEGAL DICTIONARY (11th ed. 2019). The dictionary's definition of "gratuity" directs to the term "bounty." *Gratuity*, BLACK'S LEGAL DICTIONARY (11th ed. 2019). The definition of "bounty" is largely irrelevant and unhelpful for our purposes here. *See Bounty*, BLACK'S LEGAL DICTIONARY (11th ed. 2019) ("1. A premium or benefit offered or given, esp. by a government, to

7

induce someone to take action or perform a service . . . 2. A gift, esp. in a will; generosity in giving . . . ."). But, the adjective form of the word provides greater clarity; "gratuitous" is defined as "[d]one or performed *without obligation to do so*; given without consideration in circumstances that do not otherwise impose a duty." *Gratuitous*, BLACK'S LEGAL DICTIONARY (11th ed. 2019) (emphasis added).[1]

There is very little daylight between the regulatory definition of a "tip" and the dictionary definition, or ordinary public meaning: a tip is marked by its voluntariness and the ability of the customer to determine the amount. A service charge, however, is different; it is levied by the restaurant and is mandatory. *See Service Charge*, BLACK'S LEGAL DICTIONARY (11th ed. 2019) ("A charge *assessed* for performing a service, such as the charge *assessed by a restaurant for waiters* . . . ." (emphasis added)). Simply put, if Congress wanted 29 U.S.C § 203(m)(2)(B) to cover service charges, it would have said so.[2]

Here, there is no genuine issue of material fact; the service charge was mandatory. Plaintiff testified at her deposition that when customers held an event or banquet at Defendant's restaurant, they were charged a twenty percent gratuity fee. *See* Houtz Dep. at 68:13-17. She testified that this fee was mandatory, and that customers had no discretion to pay under this amount, though they

---

[1] To be sure, other dictionaries provide us with similar results. *See Tip*, MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY, https://unabridged.merriam-webster.com/collegiate/tip (last visited Sept. 26, 2024) ("a gift or a sum of money tendered for a service performed or anticipated : gratuity"); *see also Gratuity*, MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY, https://unabridged.merriam-webster.com/collegiate/gratuity (last visited Sept. 26, 2024) ("something given *voluntarily or beyond obligation* usually for some service; especially : tip" (emphasis added)).

[2] The Court also notes that, given the fact that the regulations defining "tips" and distinguishing "service charges" were in effect for about fifty years prior to the addition of section 203(m)(2)(B), Congress certainly could have statutorily altered the regulatory definition when it added the provision, but it did not. This bolsters the Court's conclusion that the regulatory and ordinary public meaning of the terms are in congruence.

could go over. *See id.* at 75:6-12. The general manager of the restaurant testified to this fact as well. *See* Fernandes Dep. 15:11-18.

The fee at issue in this dispute may be labeled either a "service charge" or an "automatic gratuity," but regardless, it cannot be considered a "tip" under the FLSA. In common parlance, this may seem to be a distinction without a difference, but the Court must give effect to the words of the text as Congress has written it. *See In re Processed Egg Prods. Antitrust Litig.*, 610 F. Supp. 3d 697, 699 (E.D. Pa. 2022) ("No matter what a party thinks a statute *should* say or what policy *would* be best, a court's role is much more circumscribed: it must follow what the statute *actually* says."). Plaintiff's claim for a violation of Section 203(m)(2)(B) of the Fair Labor Standards Act fails as a matter of law.

b. **Retaliation Claim – 29 U.S.C. § 215(a)(3)**

Summary judgment is foreclosed as to Plaintiff's FLSA retaliation claim because a genuine question of material fact remains for the jury's adjudication. The FLSA contains an antiretaliation provision "to ensure that employees can assert their rights without fear of economic retaliation." *Hayes v. Saltz, Mongeluzzi & Bendesky, P.C.*, 652 F. Supp. 3d 537, 541 (E.D. Pa. 2023). This provision is codified at 29 U.S.C. § 215(a)(3) which makes it unlawful "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter . . . ." The Third Circuit directs this Court "to broadly construe[ ]" this provision and to not apply it "in a narrow, grudging manner." *Union v. Cabot Oil & Gas Corp.*, 49 F.4th 263, 269 (3d Cir. 2022).

FLSA retaliation claims are analyzed under the "burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L.Ed.2d 668 (1973)." *Cononie v. Allegheny Gen. Hosp.*, 29 F. App'x 94, 95 (3d Cir. 2002). This framework has three

parts. First, "the employee bears the initial burden of establishing a prima facie case of retaliation." *Marra v. Phila. Housing Auth.*, 497 F.3d 286, 300 (3d Cir. 2007). Second, "[i]f the employee establishes a prima facie case of retaliation, the burden of production shifts to the employer to articulate some legitimate, non-retaliatory reason for the adverse employment action." *Id.* Third, "[i]f the employer meets its burden, the burden of production returns to the employee, who must now show, by a preponderance of the evidence that the employer's proffered explanation was false, and that retaliation was the real reason for the adverse employment action." *Id.*

As stated, the first step of the *McDonnell Douglas* framework requires a plaintiff to make out a prima facie case of retaliation. "To state a prima facie case of retaliatory discrimination under the FLSA, a plaintiff must plead that (1) the plaintiff engaged in protected activity, (2) the employer took an adverse employment action against him, and (3) there was a causal link between the plaintiff's protected action and employer's adverse action." *Jones v. Amerihealth Caritas*, 95 F. Supp. 3d 807, 814 (E.D. Pa. 2015) (citation omitted).

### i. Plaintiff Engaged in a Protected Activity

Defendant first argues that Plaintiff did not engage in protected activity, and thus she cannot establish a prima facie case of retaliation. The Court disagrees. "The nature of a plaintiff's protected activity under 29 U.S.C. § 215(a)(3) is [ ] liberally construed." *Cohen v. BH Media Grp., Inc.*, 419 F. Supp. 3d 831, 850 (D.N.J. 2019). "Lodging an internal complaint with one's employer, whether verbally or in writing, may constitute protected activity if it is 'sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the [FLSA] and a call for their protection.'" *Eaton v. Commw. Health Sys., Inc.*, 631 F. Supp. 3d 236, 242 (M.D. Pa. 2022) (quoting *Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1, 14 (2011)).

Of course, it is not required that a complaint be ultimately successful for it to be protected. *See id.* at 243 ("To satisfy th[e] first element of her prima facie case, a plaintiff need not prove the merits of her underlying grievance." (citing *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1085 (3d Cir. 1996)). A complaint is protected so long that "the plaintiff asserts it in subjective good-faith and with an objectively reasonable belief that her employer violated the law." *Id.* at 243; *see also Zalinskie v. Rosner Law Offices, P.C.*, Civ. A. No. 12-289, 2014 WL 956022, at *6 (D.N.J. Mar. 12, 2014) ("[A] plaintiff in a retaliation action is not required to show her employer actually violated the FLSA; a plaintiff's good faith belief that her employer is in violation is sufficient."). The purpose of the anti-retaliation provision is to prevent employers from chilling employee complaints, and thus compelling employees to "quietly accept substandard conditions." *Uronis v. Cabot Oil & Gas Corp.*, 49 F.4th 263, 269 (3d Cir. 2022).

Here, Plaintiff made a reasonable, good-faith complaint regarding her pay to her employer, and this complaint was protected by the FLSA. Beginning in May of 2022, Plaintiff began to raise complaints with the restaurant's general manager about Defendant withholding two percent of the twenty-percent fee, even going so far to tell him that it was illegal. *See* Houtz Dep. 57:9-18. She re-raised this complaint in the months that followed: July, September, and October of 2022. *Id.* at 59:14-17. The complaints also included Plaintiff indicating that she was thinking about taking legal action against Defendant because of the withholding. *See id.* at 58:15-18; 59:18-25; 62:13-17.

Moreover, Plaintiff's complaint was reasonable. *See Aman*, 85 F.3d at 1085 ("[A] plaintiff need not prove the merits of the underlying discrimination complaint, but only that he was acting under a good faith, reasonable belief that a violation existed."). Under the FLSA, an employer is barred from keeping an employee's tips. *See* 29 U.S.C. § 203(m)(2)(B). And in the record here, the line item for the service charge on the customer's receipt was labeled as a "Gratuity." *See* Pl.'s

11

Ex. 2 – HOUTZ 000471 (listing on customer's receipt "20% Large Party Gratuity"). Given the legal protection surrounding tips, the legal question as to whether the service charge here was actually a "tip" under the terms of the statute, and the fact that this is an issue of first impression in this Circuit, the Court finds, under an objective standard, that it was reasonable for Plaintiff to complain that her FLSA rights were being violated. While her complaint was ultimately unsuccessful, this alone does not render it unreasonable.

In its briefing, Defendant points to the fact that Plaintiff never provided Defendant, during the time of her employment, with written documentation of her complaints regarding pay. *See* ECF No. 44-2 at 12. The Supreme Court has made clear that oral complaints qualify under the FLSA. *See Kasten*, 563 U.S. at 14 ("[A] fair notice requirement does not necessarily mean that the notice must be in writing . . . . To fall within the scope of the antiretaliation provision, a complaint must be sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the statute and a call for their protection. This standard can be met, however, *by oral complaints,* as well as by written ones."). The Court finds that Plaintiff's complaints regarding the withholding of the two percentage points was a protected activity. Her complaints to her employer were clear assertions of her rights under the Fair Labor Standards Act, and any further disputes as they relate to whether Defendant had "fair notice" are to be addressed through the jury's determination as to causation.³

        **ii.**        **There Remains a Question of Fact as to Whether Plaintiff was Demoted**

---

³ The Third Circuit has provided that "where an employer retaliates against an employee because it believed (rightly or wrongly) that the employee engaged in a protected activity, the employer *necessarily* had notice." *Uronis*, 49 F.4th at 272 (emphasis added) (citing *Kasten*, 563 U.S. at 14). Causation is a question of fact to be determined by the factfinder. *See, e.g.*, *Stewart v. Amazing Glazed, LLC*, Civ. A. No. 05-1724, 2007 WL 3334973, at *10 (W.D. Pa. Nov. 8, 2007) ("[W]hether causation is established by the proximity of Plaintiff's protected acts to the adverse employment action is a factual dispute which must be resolved by a jury.").

Defendant next argues that Plaintiff has failed to demonstrate that she was demoted or constructively discharged from her employment. There is a sufficient question of fact here to leave this issue for a jury's determination.

"An adverse action refers to any action that could deter a worker from exercising their rights, and includes termination, threats, and blacklisting, among other actions." *Hayes*, 652 F. Supp. 3d at 541-42; *see also Pinskey v. Michaels Stores, Inc.*, Civ. A. No. 2:15-cv-0184, 2016 WL 7163594, at *4 (W.D. Pa. Dec. 7, 2016) ("An adverse employment action is one that is serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment."). Actions that "reduce[ ] an employee's responsibilities, salary, or seniority" likewise qualify as adverse. *Pinskey*, 2016 WL 7163594, at *4 (citing *Fiorentini v. William Penn Sch. Dist.*, 150 F. Supp. 3d 559, 567 (E.D. Pa. 2016)).[4]

There are sufficient facts in the record to allow the retaliation claim to proceed to trial. Plaintiff alleges that she was not allowed to work any more large events at Melt Restaurant because she had complained that her tips were being withheld. *See* Houtz Dep. 45:1-10. She testified that she was told that Defendant's owner, George Paxos, made this decision because she threatened legal action. *Id.* at 45:4-10; 46:9-14, 19-24; 47:9-13.  She alleges that in the meeting imminently

---

[4] A resignation in the form of a "constructive discharge" may also qualify as an adverse employment action. *See Chandler v. La-Z-Boy, Inc.*, 621 F. Supp. 3d 568, 575 (E.D. Pa. 2022). To establish constructive discharge, Plaintiff needs to demonstrate that Defendant "knowingly permitted intolerable working conditions that were so objectively intolerable that any reasonable person subjected to them would resign. The employer's actions must be severe and pervasive, and the employer's conduct must render further employment intolerable." *Kovach v. Turner Dairy Farms, Inc.*, 929 F. Supp. 2d 477, 500 n.22 (W.D. Pa. 2013). Further, "[t]o prove constructive discharge, the plaintiff must demonstrate a greater severity of pervasiveness of harassment than the minimum required to prove a hostile working environment." *Spencer v. Wal-Mart Stores, Inc.*, 469 F.3d 311, 316 n.4 (3d Cir. 2006). Plaintiff has failed to establish sufficient facts to meet the standard of "objectively severe and intolerable working conditions" for constructive discharge. *Kovach*, 929 F. Supp. 2d at 500 n.22.

before her resignation, an employee of Defendant, one of her supervisors, informed her that she would no longer be able to work parties or large events. *See id.* at 113:15-114:23. When Plaintiff worked large parties, she received five dollars per hour. *See id.* at 41:16-22; *see also* Fernandes Dep. at 35:8-15. When Plaintiff worked shifts as a floor server, she made $2.83 per hour. *See* Fernandes Dep. at 35:3-7. She alleges that after the conversation with her employees she would only be permitted to work as a floor server, *see* Houtz Dep. at 47:8-18, making $2.83 dollars per hour in this capacity. *See* Fernandes Dep. at 35:16-20.

Defendant disputes this. Defendant's employees testified that Plaintiff was never told that she would no longer be able to work parties. Instead, they testified that they informed her that Defendant would not be changing the fee structure, and she could continue to work as a party server or as a floor server if she so chose. *See* Hofschild Dep. at 12:12-20; 15:4-11; *see also* Fernandes Dep. at 34:7-14.

This Court, viewing the facts presented and making inferences in the light most favorable to Plaintiff—the non-moving party—finds that she has put forth enough evidence that a reasonable factfinder could determine that she was demoted because she engaged in protected activity. *See Stewart v. Rutgers*, 120 F.3d 426, 431 (3d Cir. 1997) ("We are required to examine the evidence of record in the light most favorable to [Appellant], as the party opposing summary judgment, and resolve all reasonable inferences in her favor. This standard is applied with added rigor in employment discrimination cases, where *intent* and *credibility* are crucial issues." (emphasis added)).

The question of fact that remains is fairly narrow: whether Plaintiff was demoted as a result of her complaints pursuant to the FMLA. Plaintiff says she was, Defendant says she was not. Ultimately, it will be up to a jury to determine. *See El v. Se. Pa. Transp. Auth.*, 479 F.3d 232, 238

14

(3d Cir. 2007) ("[I]f there is a chance that a reasonable factfinder would not accept a moving party's necessary propositions of fact, pre-trial judgment cannot be granted. Specious objections will not, of course, defeat a motion for summary judgment, but real questions about credibility, gaps in the evidence, and doubts as to the sufficiency of the movant's proof, will."). The Defendant's Motion for Summary Judgment is denied as to Count II of the Second Amended Complaint.

V.     **CONCLUSION**

For the foregoing reasons, Defendant's Motion for Summary Judgment (ECF No. 44) is **GRANTED IN PART** and **DENIED IN PART**. Plaintiff's Motion for Partial Summary Judgment (ECF No. 45) is **DENIED**.  An appropriate Order follows.

BY THE COURT:

*/s/ John M. Gallagher*
JOHN M. GALLAGHER
United States District Court Judge